FILED
10/7/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARISSA JORDAN | No. 3:25-CR-50052<br><br>Violations: Title 18, United States Code, Sections 1341, 1343 |

## COUNTS ONE THROUGH THIRTEEN

The SPECIAL JULY 2025 GRAND JURY charges that:

1.  At times material to this indictment:

    a.  Defendant CARISSA JORDAN was a resident of Rockford, Illinois.

*Unemployment Insurance / Pandemic Unemployment Assistance*

    b.  The Social Security Act established the dual program of federal and state unemployment benefits (UI). Under the Act, each state administered its own unemployment program through their State Workforce Agency (SWA), within the guidelines of federal law.

    c.  State unemployment benefits were financed in part by state payroll taxes, which were held in trust by the United States Department of Treasury's Unemployment Trust Fund. State unemployment systems and benefits are largely financed by taxes on private employers located in that state. When state unemployment benefits are exhausted, they may be supplemented by federal funds appropriated by the U.S. Department of Labor. At times relevant to this indictment,

the federal government was providing significant supplemental benefits to the states as a result of the COVID-19 pandemic.

        d.     The CARES Act expanded states' ability to provide unemployment insurance for many workers impacted by the COVID-19 pandemic, including workers who were not ordinarily eligible for unemployment benefits. The Pandemic Unemployment Assistance ("PUA") Program allowed individuals who do not qualify for regular unemployment compensation and were unable to continue working as a result of COVID-19, such as self-employed workers and independent contractors, to file for unemployment benefits. PUA provided benefits to qualifying individuals who were otherwise able to work and available for work within the meaning of applicable state law, except that they were unemployed, partially unemployed, or unable or unavailable to work due to COVID-19 related reasons, as defined in the CARES Act. Unemployment benefit payments under PUA were retroactive for weeks of unemployment, partial employment, or inability to work due to COVID-19 reasons starting on or after January 27, 2020.

        e.     Normally, an unemployed worker initiates a UI claim in person, over the telephone, or on the Internet. The overwhelming majority of UI claims are filed online through a state website. Applicants have to answer specific questions to determine their eligibility to receive benefits, including their name, Social Security number, and mailing address. The amount of unemployment benefits that a UI claimant might be eligible for depends on several factors, including but not limited to

previous employment and the amount of wages he or she earned. Generally, in Illinois, once a UI claimant was determined to be monetarily ineligible for regular UI, a claimant could then file for PUA benefits. If a PUA application was approved, PUA benefits could be distributed onto the debit cards that had already been mailed in connection with the UI applications. For PUA claims, applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work.

        f.      The SWA would make a determination about a UI claimant's eligibility for a UI claim based on the application made by the unemployed worker. If the SWA approved a UI claim, the claimant was required to periodically certify the claim via telephone or Internet at various times during the life of the claim, usually on a weekly or bi-weekly basis. The worker must also certify that he or she is still unemployed, is able to work, and is actively seeking work.

        g.      Residents of Illinois or individuals who resided in another state but worked primarily in Illinois, and who became unemployed through no fault of their own, had the option of initiating their unemployment claim electronically via the website for the Illinois Department of Employment Security (IDES).

        h.      For approved claims, IDES paid the benefits either via debit card issued by KeyBank or to a bank account designated by the claimant. The debit cards were mailed to the claimant's mailing address via United States mail or a private or commercial interstate carrier.

  i. The unemployment benefits were loaded onto the debit card electronically. Additional benefits are loaded electronically by the bank at intervals thereafter.

  j. When a claimant using an internet protocol (IP) address registered to a physical address in Illinois filed a claim with IDES, the servers used to process those claims were located outside the state of Illinois. The servers IDES used to process PUA claims were located in Virginia.

### *The Scheme to Defraud*

 2. Beginning no later than in or around April 2020 and continuing through at least in or around September 2021, in the Northern District of Illinois, and elsewhere,

CARISSA JORDAN

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with applications for PUA funds, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

 3. It was part of the scheme that defendant, for the purpose of fraudulently obtaining over $1,000,000 in UI (including PUA funds), prepared and submitted, and caused to be prepared and submitted to IDES over 100 applications for UI and PUA on behalf of herself and other individuals, which applications contained materially false statements and misrepresentations concerning, among other things, whether

4

the claimants actually worked at the businesses claimed in the applications, the dates on which those claimants worked at the businesses, and whether they were unemployed for a COVID-19-related reason. The defendant knew at the time that the claimants did not work at the businesses specified in the applications or were not unemployed for a COVID-19-related reason.

4. It was further part of the scheme that defendant acquired the names, social security numbers, and other PII of individuals, for the purpose of submitting false and fraudulent UI and PUA applications.

5. It was further part of the scheme that defendant or the claimants periodically certified that the individuals claimed in the fraudulent applications continued to be eligible for PUA benefits in order for defendant and her co-schemers to continue to obtain PUA benefits from IDES.

6. It was further part of the scheme that defendant opted to have the fraudulent unemployment benefits paid via debit cards that were mailed to residences connected to defendant and others involved in the scheme.

7. It was further part of the scheme that defendant and others received via the United States Postal Service and private or commercial interstate carriers debit cards that were mailed by IDES as a result of the false and fraudulent UI and PUA applications.

8. It was further part of the scheme that, through the submission of the false and fraudulent UI and PUA applications, the defendants caused IDES to

disburse over $1,000,000 in UI (including PUA benefits) onto the debit cards that were mailed to defendant and to other individuals as well as into the bank accounts of unnamed co-schemers.

9. It was further part of the scheme that, in some instances, after receiving fraudulently-obtained debit cards in the mail, those who received the debit cards provided them to defendant.

10. It was further part of the scheme that, in some instances, other individuals who received fraudulently-obtained debit cards in the mail paid a portion of the fraudulently-obtained PUA benefits to defendant, in exchange for defendant submitting the false and fraudulent UI and PUA applications on their behalf.

11. It was further part of the scheme that defendant and other co-schemers withdrew PUA funds from fraudulently-obtained debit cards via automated teller machines ("ATMs") and used the fraudulently-obtained PUA funds for their personal use and benefit. These ATM withdrawals were accomplished by utilizing computer servers that were operating in interstate commerce.

12. It was further part of the scheme that defendant and others misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

13. On or about the dates set forth below, in the Northern District of Illinois, Western Division, and elsewhere, defendant, as set forth below, for the purpose of

executing the above-described scheme, and attempting to do so, knowingly caused to be delivered by the United States Postal Service or commercial interstate carrier, according to the direction thereon, envelopes addressed to the individuals listed below at the locations listed below, which envelopes contained debit cards designed to receive unemployment benefits (including PUA benefits) from IDES as listed below, each mailing constituting a separate count:

| Count | Defendant | Date | Mailing |
|---|---|---|---|
| One | CARISSA JORDAN | October 20, 2020 | Mailed debit card in the name of M.G. from KeyBank to an address in Rockford, Illinois |
| Two | CARISSA JORDAN | November 20, 2020 | Mailed debit card in the name of E.A. from KeyBank to an address in Elgin, Illinois |
| Three | CARISSA JORDAN | December 16, 2020 | Mailed debit card in the name of I.P. from KeyBank to an address in Rockford, Illinois |
| Four | CARISSA JORDAN | December 23, 2020 | Mailed debit card in the name of N.B. from KeyBank to an address in Rockford, Illinois |
| Five | CARISSA JORDAN | January 11, 2021 | Mailed debit card in the name of A.R. from KeyBank to JORDAN's address in Rockford, Illinois |

In violation of Title 18, United States Code, Section 1341.

14. On or about the dates set forth below, in the Northern District of Illinois, Western Division, and elsewhere, the defendant, as set forth below, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, listed below, each such writing, sign, and signal constituting a separate count:

| Count | Defendant | Date | Interstate Wire Transmission |
|---|---|---|---|
| Six | CARISSA JORDAN | October 17, 2020 | Online submission of PUA claim to IDES in the name of M.G. through servers located outside Illinois |
| Seven | CARISSA JORDAN | October 20, 2020 | Online submission of PUA claim to IDES in the name of T.F. through servers located outside Illinois |
| Eight | CARISSA JORDAN | November 9, 2020 | Online submission of PUA claim to IDES in the name of K.T. through servers located outside Illinois |
| Nine | CARISSA JORDAN | November 14, 2020 | Online submission of PUA claim to IDES in the name of U.V. through servers located outside Illinois |
| Ten | CARISSA JORDAN | November 21, 2020 | Online submission of PUA claim to IDES in the name of E.A. through servers located outside Illinois |

In violation of Title 18, United States Code, Section 1343.

15. On or about the dates set forth below, in the Northern District of Illinois, Western Division, and elsewhere, the defendant, as set forth below, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, listed below, each such writing, sign, and signal constituting a separate count:

| Count | Defendant | Date | Interstate Wire Transmission |
|---|---|---|---|
| Eleven | CARISSA JORDAN | January 19, 2021 | Electronic requests to withdraw approximately $3,064 from a PNC Bank ATM located in Rockford, Illinois, using a KeyBank debit card issued in the names of N.B. (ending in x6700), J.G. (ending in x5320), and A.R. (ending in x0607) |
| Twelve | CARISSA JORDAN | January 29, 2021 | Electronic requests to withdraw approximately $2,194 from a PNC Bank ATM located in Rockford, Illinois, using KeyBank debit cards issued in the names of A.R. (ending in x0607) and I.P. (ending in x3340) |
| Thirteen | CARISSA JORDAN | February 24, 2021 | Electronic requests to withdraw approximately $2,759 from a PNC Bank ATM located in Rockford, Illinois, using KeyBank debit cards issued in the names C.P. (ending in x4828) and A.R. (ending in x0607) |

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL JULY 2025 GRAND JURY further alleges:

1.  Upon conviction of an offense in violation of Title 18, United States Code, Sections 1341 and 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.  The property to be forfeited includes, but is not limited to a personal money judgment in an amount equal to the proceeds derived from the offenses in violation of Title 18, United States Code, Sections 1343 and 1341, estimated to be over $1,000,000.

3.  If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the

United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

FOREPERSON

_____
UNITED STATES ATTORNEY

11